OFFICE OF THE ATTORNEY GENERAL
CONNECTICUT

JOSEPH GASSER
ASSISTANT ATTORNEY GENERAL

Phone: +1 860-808-5400

August 18, 2026

Hon. Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals for the Second Circuit
40 Foley Square
New York, NY 10007

Re: *KalshiEX LLC v. Cafferelli, No. 26-2239*

Dear Ms. Wolfe:

The undersigned represents Defendants-appellees, who are Connecticut's Attorney General, its Commissioner of Consumer Protection, the Department of Consumer Protection, and the Department's Director of Gaming.

On August 10, 2026, the District Court for the District of Connecticut (Oliver, J.) denied Kalshi's motion to enjoin Defendants-appellees from enforcing Connecticut law as to Kalshi's offer of certain "event contracts" that violate Connecticut gambling law. [ECF 94.] On August 13, Kalshi moved in the District Court for an injunction pending appeal, which the court denied on August 15. [ECF 99.] Now, Kalshi moves for an injunction pending appeal in this Court, requesting "emergency relief as soon as possible." [Dkt. 23.1][1] ("Motion").

In *KalshiEX LLC v. Williams*, No. 26-1835, the Court recently considered Kalshi's near-identical motion arising out of its appeal from the Southern District of New York's denial of its preliminary injunction motion. On July 29, 2026, this Court denied Kalshi temporary administrative relief and referred the motion to a three-Judge panel. [ECF 32.] Based on the similarity of the issues and the procedural posture, Defendants-appellees respectfully submit that the Court should do likewise here, denying the extraordinary administrative relief Kalshi seeks and referring the Motion for a hearing.

[1] "Dkt." citations are to filings on this Court's docket; "ECF" citations are to filings in the District Court docket.

Defendants-appellees also respectfully request that the Court permit defendants until Monday, August 24, 2026, to respond more fully to the Motion.

## I. Background

Kalshi is a financial services company operating a nationwide "prediction market" on which users can trade "event contracts." Event contracts generally take the form of a yes-or-no proposition about whether future events will occur. Event contracts are traded on exchanges, and their value depends on the exchange participants' expectations of the likelihood of the event occurring. Certain event contracts are classified as "swaps," a category of derivative regulated under the federal Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* ("CEA") as a result of amendments made by the 2010 Dodd-Frank Wall Street Reform and Consumer Protection Act. *See* 7 U.S.C. §1a(47) (defining "swap"). Kalshi is a Designated Contract Market, or DCM, registered with the federal Commodity Futures Trading Commission (CFTC), enabling it to trade swaps. In general, Kalshi self-certifies its compliance with the CEA, meaning the CFTC does not specifically authorize Kalshi's event contracts before they are listed for trading.

Among the event contracts Kalshi offers are those relating to the outcomes of, and miscellaneous happenings during, sporting events. As the District Court's opinion noted:

> These sports-event contracts allow users to place positions on[,] for example, which teams will advance in the NCAA College Basketball Tournaments or who will win the U.S. Open Golf Championship. But they may also ask: 'Will Michigan win by more than 7.5 points? Or will Michigan and UConn score more than a combined 144.5 points? Or will a specific player score more than 10 points? Or pretty much anything else that might happen during a sporting event.'

[ECF 94 at 6] (cleaned up) (quoting *KalshiEX LLC v. Schuler*, No. 26-3196, 2026 U.S. App. LEXIS 12260, at *6 (6th Cir. Apr. 24, 2026)).

Connecticut regulates gaming, including sports wagering, "pursuant to…long-held police powers." *Id.* at 7. It does so through a "tightly controlled, exclusive

sports wagering market created in 2021 by the Connecticut General Assembly." *Id.* at 8 (cleaned up). Sports wagering is regulated by defendant-appellee Connecticut Department of Consumer Protection. "Offering gaming in Connecticut in a manner that violates the state's gaming laws can constitute a class A or class B misdemeanor, exposing any violators to civil and criminal penalties." *Id.* at 9.

In early 2025, Kalshi began offering so-called "sports event contracts" on its prediction market that do not meet the definition of "swaps" under the CEA and that constitute unlicensed sports wagering under Connecticut law. Accordingly, in December 2025, the Department of Consumer Protection sent cease-and-desist letters to Kalshi and other prediction markets, warning that their offer of such contracts violated Connecticut law. Kalshi promptly brought this suit and sought a preliminary injunction, claiming that the CEA preempts state law as applied to its event contracts. The District of Connecticut denied Kalshi's preliminary injunction motion on August 10, 2026 [ECF 94], prompting this appeal.

## II. Argument

Kalshi fails to demonstrate a basis for an injunction pending appeal, let alone "emergency" administrative relief pending consideration of the instant Motion.

As this Court has recognized, "an injunction issued in the first instance by an appellate court…demands a significantly higher justification than a request for a stay because, unlike a stay, an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention *that has been withheld by lower courts*." *Agudath Israel of Am. v. Cuomo*, 980 F.3d 222, 226 (2d Cir. 2020) (emphasis added). "To obtain a stay of a district court's order pending appeal, more is required, including a strong showing that the movant is likely to succeed on the merits." *Id.* (cleaned up).

As the District Court concluded both in its underlying decision [ECF 94] and its denial of Kalshi's motion for stay [ECF 99], Kalshi has failed to demonstrate a basis for an injunction. Kalshi's Motion to this Court offers no basis to impose extraordinary relief pending appeal where the District Court refused to.

*First*, while Defendants-appellees will further address Kalshi's failure to make a "strong" merits showing in their forthcoming objection, they note that the court's decision is consistent with several other prior decisions, including from the Sixth Circuit Court of Appeals.[2] Kalshi, while arguing that the District Court's decision is an aberration because it "breaks from the Third Circuit" [Dkt. 23.1 at 10], fails to acknowledge the Sixth Circuit's more recent decision denying Kalshi the exact relief it seeks here, finding that Kalshi could show only, at best, "serious questions going to the merits," an insufficient showing up against "presumptively legitimate [state] laws." *Schuler*, 2026 U.S. App. LEXIS 12260, at *19-20 (cleaned up). Kalshi does not and cannot explain why this Court should decide differently, let alone on an emergent basis.

*Second*, Kalshi fails to meet its burden as to irreparable harm. Kalshi devotes a mere four paragraphs to this prong, claiming that without an injunction from this Court, it "faces massive civil or even criminal liability," or "enormous and unrecoverable economic and reputational harm." [Dkt. 23.1 at 32-33.] But Kalshi offers nothing that the District Court has not already carefully considered and rejected. As the District Court noted, Defendants-appellees "lack[] independent authority to initiate criminal prosecutions, and any potential criminal enforcement remains speculative," and "any civil penalties imposed on Kalshi may be challenged and vacated should Kalshi ultimately prevail on the merits." [ECF 94 33-34.] Kalshi's unsupported assertions about irreparable harm fail to justify an injunction, let alone emergency relief pending a hearing on the Motion.

Further, Kalshi's claimed economic or reputational harms are purely speculative. Defendant-appellees note that even after the Sixth Circuit denied Kalshi an injunction

---

[2] *KalshiEX LLC v. Schuler*, No. 26-3196, 2026 WL 1295806 (6th Cir. Apr. 24, 2026); *KalshiEX LLC v. Cox*, No. 26-CV-151, 2026 WL 2241564 (D. Utah Aug. 4, 2026); *KalshiEX LLC* v. Williams, No. 25-CV-8846, 2026 WL 2017466 (S.D.N.Y. July 13, 2026); *KalshiEX LLC v. Johnson*, No. 26-CV-1715, 2026 WL 958171 (D. Ariz. Apr. 8, 2026); *KalshiEX LLC* v. Martin, 793 F. Supp. 3d 667 (D. Md. 2025); *KalshiEX, LLC v. Hendrick*, 817 F. Supp. 3d 1014 (D. Nev. 2025); *Nessel v. KalshiEX LLC*, 26-1087-CZ (Mi. Circuit Ct. June 29, 2026); *Nevada v. KalshiEX, LLC*, 26-0C-50 (Nev. Dist. Ct. July 24, 2026); *Massachusetts v. KalshiEX, LLC*, 2584-CV-2525, (Mass. Sup. Ct. Jan. 20, 2026).

pending appeal, Kalshi publicly boasted a staggering $22 billion valuation, claiming its "institutional trading volume has increased 800%" and that "[e]vent contracts could become a trillion-dollar market."[3] These are not the claims of a company whose prediction contract offerings are meaningfully threatened by the lack of an injunction pending appeal, let alone one whose "very viability" is at stake. *Tom Doherty Assocs. v. Saban Entm't Inc.*, 60 F.3d 27, 38 (2d Cir. 1995).

Indeed, it is defendant-appellees, charged with enforcing duly enacted state law, who will be irreparably harmed if an injunction enters. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). *See also Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) ("the inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State"). The harm is particularly apparent here, where, as explained below, the laws at issue exist to protect Connecticut residents from the harms of illegal, unregulated wagering.

*Third*, and finally, Kalshi cannot demonstrate that the balance of the equities and public policy warrant hampering Connecticut's enforcement of state law as to its sports wagers pending appeal. "In a suit against the government, balancing of the equities merges into the Court's consideration of the public interest." *Walden v. Kosinski*, 153 F.4th 118, 141 (2d Cir. 2025) (cleaned up). As the District Court noted, and Kalshi does not seriously dispute, Defendants-appellees have "interests in regulating gaming in Connecticut and ensuring that the DCP has the ability to effectuate statutes enacted to protect the public." [ECF 94 at 36.] As defendants-appellees explained in detail below [ECF 46 at 35-37], Connecticut law protects the public as a whole, and specifically minors and problem gamblers, through its carefully crafted sports wagering scheme. The State also loses significant revenue—including revenue to support youth and anti-problem gambling efforts—every day that Kalshi continues to siphon revenues away from Connecticut's regulated gaming marketplace. *Id.* at 37. Kalshi does not explain how being permitted to continue offering its sports wagers indiscriminately in Connecticut can override these critical public interests.

* * *

---

[3] Kalshi News, *Kalshi Raises $1 Billion at a $22 Billion Valuation as Institutional Adoption Accelerates* (May 7, 2026), https://perma.cc/59Q7-2X36.

The Court should deny Kalshi's Motion to the extent it seeks emergency or interim administrative relief pending resolution of the Motion. Defendant-appellees respectfully request that they be permitted until August 24, 2026, to file an objection to the Motion.

Very truly yours,

*/s/ Joseph E. Gasser*

Joseph Gasser

JEG/